LAWRENCE v. LAWRENCE.

No. 34366.   Oct. 14, 1952.

*249 P. 2d 731.*

Swank & Swank, Stillwater, for plaintiff in error.

Sterling N. Grubbs and Walter Mathews, Cushing, for defendant in error.

BINGAMAN, J.   This is a proceeding to modify the decree in a divorce action brought by plaintiff, Dorothy M. Lawrence, against the defendant, Joe Ray Lawrence, more than six months from the date of the divorce decree, under the provisions of 12 O.S. 1951 §1031.   The trial court modified the judgment as prayed for by plaintiff, awarding her an additional sum as alimony and an attorney's fee for her attorney in prosecuting the proceeding. Defendant appeals.

From the record it appears that the parties were married in 1934, in Texas; that no children were born of said marriage and that a divorce was granted to plaintiff on the 27th day of February, 1947.   The second amended petition of plaintiff in this proceeding was filed on April 23, 1948. In it plaintiff alleged that at the time of her marriage to the defendant she was possessed of a considerable sum of money which she turned over to the defendant and that at the time the divorce was granted a stipulation was entered into providing that in addition to an insurance policy given to her by the decree

of divorce, defendant would pay her the sum of $2,500 in equal monthly installments, and that a judgment for such alimony could be rendered by the trial court. She further alleged that the defendant requested her not to have this provision incorporated in the divorce decree, and promised to pay her the $2,500 as in the stipulation provided, but that at the time of making the promise he did not intend to keep it, and that the same was made for the sole purpose of cheating and defrauding her and preventing the stipulation from being brought to the attention of the court. She also alleged that at the time this arrangement was entered into she was subject to mental illness and incapacity and gave that as an additional reason for the invalidity of the arrangement.

Defendant in his answer alleged that if she was incompetent, as alleged in her second amended petition, she was incompetent at the time the parties were married and that the marriage should be annulled; denied that plaintiff turned over any funds to him after the parties were married; alleged that the plaintiff pursued and annoyed him at all times so that he insisted upon a divorce, and that he made the agreement to pay her the sum of $2,500 on condition that she return to her home in the State of Washington and remain there, and that the note he made to her was signed with that understanding. He further alleged that she did not comply with her promise but refused to leave the city of Cushing, in which the parties lived, and continued to annoy him and demand money, which he refused to pay until she left Cushing and quit annoying and interfering with him.

We have carefully read and re-read the record in this case. Therefrom it appears that at the request or insistence of defendant plaintiff filed suit for divorce; that her attorney and the attorney of defendant, who was also defendant's father, prepared a stipulation as set out in plaintiff's petition, whereby a judgment for $2,500, payable $50 per month, was to be rendered for plaintiff. Plaintiff testified that at the time the note was executed she understood it was simply a supplementary promise on the part of defendant to pay her and did not understand that the provision in the stipulation was not to be incorporated in the decree. Her attorney testified that after the agreement or stipulation was prepared and signed by both parties and their attorneys, the attorney for defendant refused to permit it to be put in the journal entry of judgment; that defendant's attorney represented to him and to plaintiff that if the note was signed and delivered in lieu of the judgment for said sum of $2,500, he would personally see that the note was paid, and that plaintiff finally agreed that the matter could be handled in that way. In that connection plaintiff insisted that her attorney's fee be paid by defendant, which was also contrary to the terms of the stipulation, and defendant agreed and paid such fee; that when the case was submitted to the trial court the court wished to be informed as to the property settlement or stipulation and asked why it was not incorporated in the journal entry, and that he told the court that defendant's father would not permit it to be so incorporated; that defendant's attorney told the court that they had reached an agreement and everything was settled, and that the note was duly delivered to plaintiff.

From the record it appears that defendant at no time made any payment on the note. He testified that a condition of his payment of the note was that plaintiff was to leave the city of Cushing and go to her father's residence in the State of Washington and remain there and cease harassing and annoying him, but that she remained in Cushing in violation of this agreement and continually harassed and annoyed him, and that for that reason he made no payments on the note. At one point in his testimony he also stated that he did not have the money.

From the testimony of plaintiff and a witness for the defendant, who was employed at the plant in Cushing operated by defendant, it reasonably appears that plaintiff, who was employed at the time, did not bother the defendant until after he failed to make payments on the note, and that she then importuned him to make such payments and did harass and annoy him at different times. She testified to this fact and the other witness testified that after the divorce decree was entered the plaintiff told her that he owed her the money and that she was glad he was going to pay it; that he had always been fair with her in all money matters. Defendant admitted that he owed the sum of $2,500 to plaintiff and that he signed the note promising to pay her. He also admitted that plaintiff left the city of Cushing at some time after the divorce was granted and went to the State of Washington, where she remained for several months, and that he made no payments on the note while she was absent from Cushing. He excused his failure on the ground that she had violated her agreement with him.

There is also testimony by two physicians to the effect that plaintiff was suffering from a malady which rendered her more or less infirm mentally, but both of these witnesses examined her a considerable time after the divorce was granted and there is no testimony that she was rendered mentally incompetent by this malady at the time the divorce was granted or the arrangement made for the payment of the $2,500. Both physicians testified that she might be better at times and have full use of her faculties.

At the conclusion of all the evidence the trial court rendered judgment modifying the decree by adjudging that plaintiff was entitled to recover the sum of $2,750 as permanent alimony, and that defendant should pay her attorneys in the modification proceeding the sum of $250 as their fee. The court also required the defendant to pay $1,450 of the amount adjudged due plaintiff within fifteen days from the date of the judgment, and $50 per month thereafter until the balance be paid. He ordered the note executed by defendant surrendered into court to be delivered to defendant when the judgment became final.

Defendant first contends that the trial court erred in granting judgment against him for attorney's fees in the proceeding, citing in support thereof Friedman v. Friedman, 132 Okla. 45, 269 P. 257. We consider that case inapplicable in the situation presented by this case.

In Tinker v. Tinker, 144 Okla. 94, 290 P. 187, we held that where a motion to modify the decree of divorce as to the maintenance of a minor child was filed, the plaintiff, who in that case resisted the motion made by defendant, was entitled to attorney's fees. While in that case the maintenance of a minor child was involved, we said that the weight of authority seemed to be that the court had power to award counsel fees of the wife in resisting a motion to modify filed by the husband, citing Hipple v. Hipple, 128 Kan. 406, 278 P. 33. To the same effect is Strauch v. Strauch, 196 Okla. 184, 164 P. 2d 220. We think the same rule applies in the instant case and that where plaintiff, in order to obtain the money rightfully owing to her, was compelled to bring a proceeding to modify the judgment, she would be entitled to a reasonable attorney's fee for her attorney.

Defendant also contends that no fraud sufficient to justify the vacating or modification of the decree as to alimony was established in this proceeding, citing Arnold v. Arnold, 194 Okla. 571, 153 P. 2d 224; Rule v. Rule, 93 Okla. 276, 225 P. 170, and Philip Carey Co. v. Vickers, 38 Okla. 643, 134 P. 851. We are unable to agree with this contention. Fraud is defined in 15 O.S. 1951 §58, as a promise made without any intention of performing it, or any

other act fitted to deceive. From the evidence in the instant case, as set out above, it is clear that plaintiff in accepting the note in lieu of the incorporating of the stipulation in the journal entry did so because she believed that her husband had always been fair in money matters, and that she relied upon his assurance and the assurance of his father that the note would be paid. It also reasonably appears that defendant at no time made any effort to comply with his promise or that of his attorney, and made no payments upon the note either when it first became due or after plaintiff had left the city of Cushing for her home in Washington. This, in our judgment, warranted the inference that defendant had no intention of paying the note. A somewhat similar case is Burkdoll v. Burkdoll, 178 Okla. 392, 62 P. 2d 1266.

In Rohland v. International Harvester Co. of America, 182 Okla. 200, 76 P. 2d 1078, we held that a promise to perform something in the future made as an inducement to obtain a contract constituted fraud where made with intent not to perform.

In First State Bank of Canute v. Thomas, 201 Okla. 325, 205 P. 2d 866, we said:

"This court has adopted what is sometimes termed 'the modern view' of fraud, and has held in many instances that fraud is a 'generic' term and embraces all unfair ways by which another is cheated or unlawfully imposed upon. Under these decisions, the term 'fraud' may include certain elements of duress, undue influence, threats and intimidation. Bigpond v. Mutaloke et al., 187 Okla. 611, 105 P. 2d 408; Johnson v. McDonald et al., 170 Okla. 117, 39 P. 2d 150."

In Hill v. Hill, 197 Okla. 697, 174 P. 2d 232, we said that the trial court's discretion in awarding alimony in a divorce action should be controlling, and its conclusions should not be disturbed unless clearly against the weight of the evidence, or unless there had been some abuse of discretion. The same rule has been announced by this court in many cases. In the instant case the trial court heard the testimony and saw the witnesses, and we are unable to say from a careful examination of the record that its judgment or order modifying the divorce decree is clearly against the weight of the evidence.

Affirmed.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, and JOHNSON, JJ., concur.